UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JAMES CHANDLER MOUND,<br><br>Movant,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | 4:17-CV-04089-KES<br><br><br>REPORT & RECOMMENDATION |

## INTRODUCTION

Movant, James Chandler Mound, has filed a *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. See Docket No. 1.[1] Now pending is a motion to dismiss by respondent the United States of America ("government"). See Docket No. 15. Mr. Mound did not file a response to the motion. This matter has been referred to this magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) & (B) and the October 16, 2014, standing order of the Honorable Karen E. Schreier, United States District Judge. The following is this court's recommended disposition of the government's motion.

## FACTS

### A. Preliminary Proceedings

Mr. Mound was charged in an indictment with being a felon in possession of firearm, possession of an unregistered firearm, transfer of an

---

[1] Within this opinion the court cites to documents in this, Mr. Mound's civil habeas case by simply citing the court's docket number for that document. Documents filed in his criminal case will be cited "CR" followed by the appropriate docket number.

unregistered firearm, and conspiracy to transfer an unregistered firearm. <u>See</u> <u>United States v. Mound</u>, CR No. 15-40120-01, Docket 2 (D.S.D.). Mr. Mound made his initial appearance on October 14, 2015, at which time Jason Tupman of the Federal Public Defender's Office was appointed as counsel for Mr. Mound. <u>See</u> CR Docket Nos. 13 & 15. Shortly thereafter Mr. Tupman discovered a conflict of interest and the court appointed Michael W. Hanson as substitute counsel to represent Mr. Mound. After exchanging discovery the parties reached a plea agreement. CR Docket Nos. 58 & 59.

**B.      Change of Plea**

Mr. Mound's change of plea hearing was held on March 22, 2016. CR Docket No. 168. During the change of plea hearing, the district court specifically explained to Mr. Mound that she might sentence him more severely than he anticipated. <u>Id.</u> at p. 5. Mr. Mound specifically indicated that he understood this. <u>Id.</u> The court also explained that the maximum possible penalty was a period of imprisonment of ten years (120 months), followed by three years of supervised release. <u>Id.</u> at p. 6. Mr. Mound also specifically indicated that he understood the maximum possible penalty. <u>Id.</u> at p. 7. Mr. Mound answered affirmatively when the court asked whether Attorney Hanson had talked with him about what Mr. Mound's advisory guideline range might be. <u>Id.</u> The court cautioned Mr. Mound, however, that Mr. Mound's guideline range could not be determined until the presentence report was completed and any objections thereto were ruled upon by her. <u>Id.</u> The court told Mr. Mound "because of that, the range that I find at the time of sentencing might be different than the estimate that he gave you. Do you understand

that?" Id. To this, Mr. Mound responded, "I understand." Id. The court also advised that, after considering other factors, his sentence might be more or less than the advisory guideline range. Mr. Mound indicated that he understood this, as well. Id. at 8.

Mr. Mound's presentence report detailed his criminal history, including a an aggravated assault case (CR 14-2713, Second Judicial Circuit, Minnehaha County, South Dakota) in which Mr. Mound had, in January, 2015, originally received a sentence of 12 years in prison (suspended) and 180 days in custody. At the time of Mr. Mound's federal sentencing hearing, in June, 2016, a petition to revoke the suspended portion of this state sentence had been filed, but the state court had not yet acted on that petition. Ultimately, in August, 2016, after Mr. Mound's federal sentencing hearing, the state court sentenced Mr. Mound in CR 14-2713, and re-imposed the entire 12 year term of imprisonment, ordering said term to run *concurrently* with Mr. Mound's federal sentence. It appears that two other state cases which were pending in the Second Circuit, Minnehaha County at the time of Mr. Mound's federal sentencing (CR 15-2953 and CR 15-5382) were both dismissed by the prosecutor, thus resulting in no prison sentences for those cases.

## C.    Sentencing

Mr. Hanson filed objections to the presentence report in Mr. Mound's federal criminal case. See CR Docket Nos. 81 and 103. Sentencing began on June 13, 2016 (CR Docket No. 170), but, upon Mr. Hanson's discovery of information obtained when another individual "cleared out," the sentencing was continued at Mr. Hanson and Mr. Mound's request because they wished to

file an additional objection to the presentence report.  Id. at 4.  Additionally, the government wished to have time to respond to the additional objection and perhaps call a witness to support its response.  Id.

The sentencing hearing was therefore was continued until June 27, 2016 (CR Docket  No. 172).  At the beginning of the sentencing hearing, the district court specifically asked Mr. Mound's lawyer whether he'd had a chance to review the presentence report with Mr. Mound.  Id. at 2.  Mr. Hanson said "yes."  Id.  Mr. Mound did not voice any disagreement with Mr. Hanson's answer.  The court then proceeded to discuss the two objections Mr. Hanson had filed to the presentence report.  Id. at pp. 3-8.  The court overruled both objections.  Id. at pp. 5, 8.  Mr. Mound's total offense level was determined to be 27, and his criminal history category was V.  His guideline range was therefore 120 to 150 months.  The statutory maximum, however, for the crime for which he pleaded guilty (felon in possession of a firearm in violation of 18 U.S.C. § § 922(g)(1) and 924(a)(2)) was 120 months.

Next, Mr. Hanson argued on behalf of Mr. Mound.  He insisted Mr. Mound was only a minor participant, and requested a downward departure or a downward deviation from the bottom of Mr. Mound's guideline range (120 months)  Id. at 9.  Mr. Hanson acknowledged that Mr. Mound had "some" criminal history, but argued that except for a federal aggravated assault conviction, Mr. Mound's criminal history consisted of relatively minor offenses. Id. at pp. 9-10.

The court invited Mr. Mound to speak on his own behalf.  Id. at p. 10. Mr. Mound accepted full responsibility for his actions.  Id.  After the

4

government offered its opinion on the appropriate sentence, the court returned her focus to Mr. Mound, engaging Mr. Mound in a lengthy back-and-forth conversation about his upbringing, both of his parents, his children, his past problems (including his past convictions and charges that had been brought against him but dismissed), and his hopes for the future. Id. at pp. 10-16. Much of this conversation centered on information contained in the presentence report, and the court specifically referenced the presentence report in the context of her discussions with Mr. Mound. Id. Despite the court's repeated references to the presentence report during this conversation with him, Mr. Mound never contradicted his lawyer's statement, made at the beginning of the sentencing hearing, that he had reviewed the report with Mr. Mound before the sentencing hearing began. Mr. Mound likewise never disputed any of the information from the presentence report to which the court referred during this back and forth conversation. The court sentenced Mr. Mound to 120 months' imprisonment and 3 years' supervised release (the bottom of Mr. Mound's guideline range). CR Docket 172 at p. 18; CR Docket Nos. 115 & 116. The court specified that this federal sentence would run consecutively to Mr. Mound's then yet-to-be imposed state sentence in Minnehaha County. CR Docket No. 172 at p. 18. Mr. Mound did not file a direct appeal.

## D. Mr. Mound's § 2255 Motion

Mr. Mound filed his current motion to vacate, correct or set aside his sentence on July 10, 2017. See Docket 1. Mr. Mound alleges two claims for relief based upon ineffective assistance of counsel and one claim for relief

based upon an illegal sentence.  The ineffective assistance claims assert that

counsel failed to argue for a concurrent sentence, erroneously advised

Mr. Mound as to his approximate sentencing guideline range, and failed to

show Mr. Mound his presentence report.  The claim for relief based upon an

illegal sentence is grounded upon Mr. Mound's belief that he is entitled to have

his federal and state sentences run concurrently rather than consecutively.

The government argues that Mr. Mound's motion should be dismissed for

failure to state any valid claim for relief.  See Docket No. 15.

## DISCUSSION

### A.    Scope and Procedure Applicable to a § 2255 Motion

Section 2255 of Title 28 of the United States Code provides, in relevant

part, as follows:

> (a)  A prisoner in custody under sentence of a court established by
> Act of Congress claiming the right to be released upon the ground
> that the sentence was imposed in violation of the Constitution or
> laws of the United States, or that the court was without
> jurisdiction to impose such sentence, or that the sentence was in
> excess of the maximum authority authorized by law, or is
> otherwise subject to collateral attack, may move the court which
> imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Section 2255 of Title 28 of the United States Code was enacted to

supersede habeas corpus practice for federal prisoners.  Davis v. United States,

417 U.S. 333, 343-44 (1974).  Prior to the enactment of § 2255, habeas claims

had to be brought in the district where the prisoner was confined, resulting in

overburdening those districts where federal correctional institutions were

located and presenting logistical issues because the record in the underlying

criminal case was often in a distant location.  <u>United States v. Hayman</u>, 342 U.S. 205, 212-16 (1952).  The enactment of § 2255 resolved these issues by requiring that the motion be filed in the sentencing court.  <u>Id.</u>

The scope of a § 2255 motion is seemingly broader than the scope of a habeas petition, the latter of which is typically limited to allegations of a constitutional dimension.  Section 2255 allows a federal prisoner to "vacate, set aside or correct" a federal sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  <u>See</u> 28 U.S.C. § 2255.  Where the allegation for relief is <em>not</em> based on a violation of a Constitutional right or an assertion that the court was without jurisdiction, the Supreme Court has read a "fundamentality" requirement into § 2255--relief is available for only those errors which constitute a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure."  <u>Hill v. United States</u>, 368 U.S. 424, 428 (1962); <u>see</u> <u>Peguero v. United States</u>, 526 U.S. 23, 27-30 (1999).

Generally, petitioners are precluded from asserting claims pursuant to § 2255 that they failed to raise on direct appeal.  <u>United States v. Frady</u>, 456 U.S. 152, 167-68 (1982); <u>McNeal v. United States</u>, 249 F.3d 747, 749 (8th Cir. 2001).  When a § 2255 petitioner asserts a claim that is procedurally defaulted because it was not raised on direct appeal, the claim can only proceed after the petitioner has shown either:  (1) actual innocence or (2) that the procedural

default should be excused because there was both cause for the default and actual prejudice to the petitioner.  Bousley v. United States, 523 U.S. 614, 621-22 (1998); McNeal, 249 F.3d at 749.  Therefore, barring a claim of actual innocence, a petitioner must show both cause for why he failed to raise an issue on direct appeal as well as actual prejudice caused by the alleged errors.

Appellate courts generally refuse to review claims of ineffective assistance of counsel on direct appeal; such claims are, therefore, properly addressed for the first time in a § 2255 motion such as the one here.  See United States v. Lee, 374 F.3d 637, 654 (8th Cir. 2004) (ineffective assistance of counsel claims are not generally cognizable on direct appeal and will be heard only to prevent a miscarriage of justice or in cases where the district court has developed a record on the issue).  Therefore, no procedural default analysis is required before examining a claim of constitutionally-deficient counsel.

**B.     Mr. Mound's Substantive Claims**

**1.     Ineffective Assistance Claims (Grounds One and Three)**

**a.     The Strickland Standard**

Mr. Mounds articulates two claims in his petition (grounds one and three) which are based upon his assertion that his counsel was ineffective.  The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel.  The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.' " Strickland v. Washington, 466 U.S. 668, 698 (1984) (citing McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970)).  Strickland is the benchmark case for determining if counsel's assistance was so defective as to violate a

criminal defendant's Sixth Amendment rights and require reversal of a conviction. <u>Id.</u> at 687. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." <u>Id.</u> at 687-688. The defendant must also show that counsel's unreasonable errors or deficiencies prejudiced the defense and affected the judgment. <u>Id.</u> at 691. The defendant must show "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." <u>Id.</u> at 695. In sum, a defendant must satisfy the following two-prong test. <u>Id.</u> at 687.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

<u>Id.</u>

"There is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." <u>Hall v. Luebbers</u>, 296 F.3d 685, 692 (8th Cir. 2002). It is the movant's burden to overcome this presumption, and a movant "cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." <u>Id.</u> Judicial scrutiny of attorney performance is highly deferential, with a strong presumption that counsel's conduct falls within the range of reasonable

professional conduct.  <u>Strickland</u>, 466 U.S. at 698.  With these principles of law in mind, the court examines the claims articulated by Mr. Mound in grounds one and three of his petition.

### b.     Concurrent or Consecutive Sentences

In ground one, Mr. Mound asserts his counsel was ineffective for failing to argue that Mr. Mound's federal sentence should run concurrently with his then-pending state sentence.  To clarify this claim, the court refers to the presentence report (CR Docket 114).  At the time of Mr. Mound's federal conviction, he had two pending state charges (CR 15-2953, Minnehaha County, South Dakota) and (CR 15-5382, Minnehaha County, South Dakota).  These cases appear to be related, and were in the nature of violation of a protection order/witness tampering.  Mr. Mound does not claim in this pending petition that he received any prison time as a result of those state charges.  Additionally, it appears to this court that both of those cases were ultimately dismissed, resulting in no prison sentences for Mr. Mound.

In its brief, the government mentions an additional revocation proceeding against Mr. Mound which was listed in Mr. Mound's presentence report, and which was unresolved at the time of his federal sentencing hearing, <u>State v. Mound</u>, MAG 14-331, Second Judicial Circuit, Minnehaha County, South Dakota.  That case involved Mr. Mound's failure to pay a taxi cab fee.  His 20-day jail sentence was initially suspended.  When he failed to pay restitution, the prosecutor moved to revoke the 20-day suspended sentence.  This court is unable to determine whether the 20 days of suspended jail time were ever imposed in that case.  Mr. Mound does not make a claim regarding that case in

this pending § 2255 petition or assert that the 20-day jail sentence is being served consecutively to his federal sentence.

The case about which Mr. Mound complains in this § 2255 petition then is State v. Mound, CR 14-2713, Second Judicial Circuit, Minnehaha County, South Dakota. That case involved an aggravated assault charge in state court and is referenced in Mr. Mound's presentence report at p. 10. See CR Docket 114, p. 10. At the time of Mr. Mound's federal sentencing, Mr. Mound had already served the 180-day portion of this sentence, but the state had moved to revoke the 12-year suspended portion of the sentence. The state court judge had not yet determined whether or how much of Mr. Mound's 12-year suspended sentence would in fact be re-imposed.

According to the electronic form of South Dakota's criminal records which are available to this court, on August 1, 2016, (about a month after Mr. Mound was sentenced on this federal charge) the state court re-imposed the entire 12-year suspended sentence in Mr. Mound's state aggravated assault case with credit for 652 days previously served. Contrary to the federal court's order in Mr. Mound's federal case, however, the state court ordered the state 12-year sentence to run *concurrently* with Mr. Mound's federal sentence. According to the South Dakota State Penitentiary offender locator website, Mr. Mound's initial parole date on this state aggravated assault sentence is in March, 2023, and his term expires in October, 2026. In other words, Mr. Mound will remain incarcerated at the South Dakota State Penitentiary for approximately six years and possibly nine years before he will begin to serve his 120 month federal sentence on the felon in possession conviction.

Mr. Mound asserts his lawyer in this federal matter was ineffective for failing to argue during the sentencing hearing that this federal sentence should run concurrently rather than consecutively with the then-yet-to-be-imposed 12-year state sentence. Mr. Mound asserts his lawyer claimed he'd asked the prosecutor for a concurrent sentence. In his affidavit (Docket No. 10, ¶ 5), counsel avers that it is his recollection that he asked during the federal sentencing hearing for the sentences to run concurrent. This court has reviewed the sentencing transcript (Docket 172) and finds no such request.

The government directs the court to Mr. Mound's presentence report and the 2015 version of the United States Sentencing Commission Guidelines Manual, which gave the district court guidance regarding whether to impose Mr. Mound's federal sentence concurrently or consecutively. At page 20, ¶ 83 of Mr. Mound's presentence report, the probation officer advised as follows:

> Pursuant to USSG § 5G1.3(d) and comment n.4(c), in the case in which a defendant was on state or federal probation, parole or supervised release at the time of the instant offense and has had such supervision revoked, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the term of imprisonment that has been imposed or yet-to-be imposed in the revocation. Consistent with the policy set forth in USSG § 7B1.3, comment n.4(f), the Commission recommends that that sentence for the instant offense be imposed to run consecutively to the sentence imposed for the revocation. It is noted the defendant also has pending state charges that occurred just months before the instant offense, as well as a pending revocation proceeding.

See presentence report ¶ 83, Docket 114, p. 20. The guideline and comments to which the pretrial writer referred are reproduced in their entirety below:

**U.S.S.G. § 5G1.3(d):**
(d)  (Policy Statement)  In any other case involving an undischarged term of imprisonment, the sentence for the instant

offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

**Comment (n.4.C)**

(C)　　Undischarged Terms of Imprisonment Resulting from Revocations of Probation, Parole or Supervised Release.— Subsection (d) applies in cases in which the defendant was on federal or state probation, parole, or supervised release at the time of the instant offense and has had such probation, parole or supervised release revoked.　Consistent with the policy set forth in Application Note 4 and subsection (f) of §7B1.3 (Revocation of Probation or Supervised Release), the Commission recommends that the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation.

U.S.S.G. § 5G1.3(d) makes clear that the federal court had the discretion to run Mr. Mound's federal sentence concurrently, partially concurrently, or consecutively to his yet-to-be re-imposed state sentence. It is equally clear that, despite his recollection to the contrary, counsel did not request a concurrent sentence, either orally during the sentencing hearing, or in writing (either in the form of a sentencing memorandum or in the plea agreement).

The government argues that Mr. Mound was not entitled to have his counsel raise every conceivable argument on his behalf. Engle v. Isaac, 456 U.S. 107, 134 (1982) ("the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim.").

In Mr. Mound's case, a concurrent sentence as opposed to a consecutive sentence would have equated to ten less years in prison. That counsel failed to request a concurrent sentence when it appears the court had the discretion grant such a request at least raises the possibility that counsel's performance

fell below the objective standard of reasonableness. As explained above, however, that alone is not enough to prove ineffective assistance of counsel. Mr. Mound must also prove that he has suffered prejudice.

Mr. Mound has not shown that, had his counsel asked the court to impose a concurrent sentence, it would have done so. In the absence of any such evidence, Mr. Mound cannot show prejudice. The mere *possibility* that the court would have granted a concurrent sentence is too speculative to show the prejudice necessary to prove prejudice under Strickland (i.e. that but for counsel's errors, the result of the proceedings probably would have been different). See Prewitt v. United States, 83 F.3d 812, 818 (7th Cir. 1996). In Prewitt, the petitioner, like Mr. Mound, argued his counsel was ineffective for failing to request a concurrent sentence. The Seventh Circuit rejected the petitioner's claim, noting that U.S.S.G. §5G1.3 provided only the possibility of a concurrent sentence. Id. at 819. "This discretion to sentence Prewitt means only that the *possibility* existed he would receive a concurrent sentence. . . . A mere possibility of prejudice does not qualify as *actual* prejudice." Id.

The same result occurred in United States v. Alvarez, 184 Fed. Appx. 876 (11th Cir. 2006). In that case, the defendant was sentenced to concurrent sentences in a federal proceeding. Id. at 878. At the time of his sentencing, however, he also had other, undischarged federal sentences to serve. Id. The prisoner filed a § 2255 petition, asserting that his counsel was ineffective for failing to specifically ask at sentencing that the concurrent sentences for the instant offense also be served concurrent with his then-pending undischarged other federal sentences. Id. at 879.

The petition in <u>Alvarez</u> was denied because, though the court found counsel's performance was probably deficient, the prisoner failed to show prejudice. "Alvarez has not shown prejudice because there was no reasonable probability that the sentencing court would have granted a request that the instant sentence run concurrently with Alvarez's other federal sentences." <u>Id.</u> Mr. Alvarez filed objections to the magistrate judge's report and recommendation, arguing he should have at least been entitled to a hearing before the matter was dismissed. <u>Id.</u> The Eleventh Circuit disagreed. <u>Id.</u> at 881. The court reiterated that under <u>Strickland</u>, to show prejudice the prisoner must show a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Id.</u> "It is not enough for the [prisoner] to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u> (citing <u>Strickland</u>, 466 U.S. at 694). "In the sentencing context, the defendant must show a reasonable probability that his sentence would have been different." <u>Id.</u> (citing <u>Peoples v. Campbell</u>, 377 F.3d 1208, 1244 (11th Cir. 2004) (applying <u>Strickland's</u> prejudice prong in § 2254 context).

The court explained that Mr. Alvarez had not met his burden to show that, even if his counsel had made an explicit request, the district court would have ordered his federal sentences to run concurrently. <u>Id.</u> This is because the court, though speaking in a different context, made clear that a lengthier sentence was appropriate when a defendant committed multiple offenses— making it much less likely that the court would have granted his request to run two unrelated sentences concurrently. <u>Id.</u> "Alvarez's assertion that the

sentencing judge might have imposed a sentence concurrent with his other federal sentences is mere speculation.  We note that the sentencing judge had the discretion to impose a sentence concurrent or partially concurrent with Alvarez's other sentences, regardless of whether Alvarez's counsel requested the court to do so.  See 18 U.S.C. § 3884(a); U.S.S.G. 5G1.3(c)."  Id.  As such, the court denied Mr. Alvarez's claim, including his assertion that he was entitled to a hearing before his § 2255 was dismissed at the district court level. Id.

The Third Circuit reached the same result in United States v. Hopkins, 568 Fed. Appx. 143 (3d Cir. 2014).  In that case, the defendant was convicted of a narcotics offense in federal court.  Id. at 145.  He was also convicted in state court for aggravated assault.  Id.  He was sentenced in federal court first, and though his lawyer noted during the federal sentencing hearing that the defendant would be sentenced in the future on the state court charges, the lawyer did not advocate for the state and federal sentences to run concurrently. Id.  In fact, the attorney apparently mistakenly believed the sentences must run consecutively.  Id.  The judge ordered the state and federal sentences to run consecutively.  Id.

Mr. Hopkins filed a § 2255 petition, asserting his lawyer was ineffective for failing to advocate for concurrent state and federal sentences.  Id.  The Third Circuit found that even if Mr. Hopkins' counsel was ineffective for failing to advocate for a concurrent sentence, Mr. Hopkins could not prevail because he had not shown prejudice under Strickland.  Id. at 148.  "In the sentencing context, Mr. Hopkins must show there was a reasonable probability that 'the

deficient performance affected [his] sentence.' " <u>Id.</u> (citing <u>United States v.</u> <u>Hankerson</u>, 496 F.3d 303, 310 (3d Cir. 2007)) (additional citations omitted). The court noted that a totally speculative harm, or the mere possibility of receiving a concurrent sentence did not demonstrate prejudice. <u>Id.</u> The court concluded there was not a reasonable probability that, had his counsel requested concurrent sentences, the district court would have imposed concurrent sentences. <u>Id.</u> This was because the underlying state and federal convictions were for entirely different crimes. <u>Id.</u>

> Because it is likely that the federal sentencing court would have wanted to ensure that Hopkins was separately punished for these separate offenses, it is likely that the court would have ordered its sentence to run consecutive to the future state sentence. Moreover, a sentencing court would likely have found a consecutive sentence appropriate here in light of the nature of Hopkins's conduct and criminal history. As the sentencing court noted, Hopkins's crimes were violent, he had previously escaped from the work release center, he had been undeterred by previous punishments, and he presented a serious risk of recidivism. Thus, Hopkins would have likely received a consecutive sentence even without counsel's alleged error and he cannot show that he was prejudiced by his counsel's failure to request a concurrent sentence.

<u>Id.</u> Because Mr. Hopkins could not show prejudice caused by his counsel's failure to request concurrent sentences, therefore, the Third Circuit dismissed his § 2255 petition.

This court has not found any cases on point within the Eighth Circuit or the District of South Dakota. Other district courts, however, have reached the same results as the cases cited above. For example, in <u>Welker v. United States</u>, 2009 WL 57139 (E.D. Mo. Jan. 9, 2009), the petitioner (Mr. Welker) moved to vacate his sentence under § 2255. He argued his counsel was ineffective for

failing to request that his federal sentence run concurrently with his state sentence under U.S.S.G. § 5G1.3(c).[2] Id. at *1-2. At the time Mr. Welker committed his federal offenses, he also had a state prison sentence. Id. at *2. Mr. Welker's federal prison sentence was specifically ordered to run concurrently with his revoked probation sentences, but as to the state prison sentence, the federal sentence was ordered to run only partially concurrently. Id. at *3.

The court found that even if the lawyer's performance was deficient, Mr. Welker failed to meet the prejudice requirement of an ineffective assistance claim. The court noted that in order for Mr. Welker to prevail, (i.e. in order for his counsel's performance to be constitutionally ineffective) Mr. Welker must show actual prejudice. Id. at *4. But because under the guidelines the court's decision regarding whether to run the state and federal sentences concurrently or consecutively was discretionary, "there is only a possibility, not a reasonable probability, that a court would impose a concurrent rather than a consecutive sentence if a motion under § 5G1.3(c) is properly raised." Id. A mere *possibility* of prejudice does not suffice to meet the threshold needed to establish ineffective assistance. Id. The court therefore denied Mr. Welker's ineffective assistance claim without an evidentiary hearing. Id. at *2, 4.

In United States v. Law, 2012 WL 1671289 (E.D. Pa. May 14, 2012) the petitioner, Mr. Law, moved to vacate his sentence after his lawyer failed to

---

[2] The lawyer did not request a concurrent sentence, but instead asked that the federal sentence begin running "immediately." As the judge interpreted this request, the lawyer's statement amounted to a request for a partially concurrent sentence rather than the consecutive sentence suggested by the guidelines. Id. at *4.

request that his federal sentence run concurrently with his then undischarged state sentence. Id. at *1. At the time of his sentencing for his federal crime (possession of crack cocaine with intent to distribute), Mr. Law had already begun to serve a state sentence for an unrelated crime, but there were seven months remaining on that state sentence. Id. at *2. At his federal sentencing, there was no mention of the time remaining on his state sentence. Id. The presentence report mentioned the state sentence, but did not discuss how it might interact with the federal sentence to be imposed for the federal drug charges. Id.

In his § 2255 motion, Mr. Law argued his counsel was ineffective for failing to specifically ask for his federal sentence to run concurrently, resulting in the sentences running consecutively. Id. at *3. The court rejected Mr. Law's claim, noting that in cases like his, the decision whether to run the sentences concurrently or consecutively was left to the discretion of the sentencing judge. Id. A § 2255 movant cannot show prejudice unless he can show a "reasonable probability" that the sentencing judge would have exercised that discretion in his favor. Id. The court noted that when a movant's state and federal offenses are unrelated this "generally implies that consecutive sentences are more likely to be appropriate." Id. at *4 (punctuation altered, (citing Setser v. United States, 132 S. Ct. 1463, 1476 (2012)). Because Mr. Law failed to show a reasonable probability the sentencing court would have exercised its discretion to impose concurrent sentences, the court denied Mr. Law's § 2255 motion without an evidentiary hearing. Id. at *4-5.

As in the cases cited above, Mr. Mound has provided nothing but speculation that, had his counsel specifically requested concurrent sentences, the district court would have imposed his federal sentence to run concurrently with his yet-to-be imposed state sentence. Pursuant to the presentence report, the court was clearly aware that, if it was so inclined, it had the discretion to impose a concurrent sentence. The crime for which Mr. Mound was awaiting sentencing in state court (aggravated assault) was completely different than the federal crime (felon in possession of a firearm) for which the federal court imposed sentence.

Though there was no discussion on the record in Mr. Mound's sentencing hearing about whether a concurrent or consecutive sentence should be imposed, the same court has indicated in another setting that it is the court's usual inclination to impose consecutive sentences. See e.g. United States v. Gotch, 2017 WL 2912415 (D.S.D. July 7, 2017). In that case, the defendant moved to correct his sentence to run completely concurrent with his state sentence, rather than only from the date of his sentencing forward. Id. at * 3. There was a discussion during the federal sentencing hearing about whether the state and federal sentences should run consecutively or concurrently. Id. at * 1. After listening to the parties' positions, the court remarked that it would "normally run the federal sentence consecutive to the state parole revocation sentence . . ." Id. In Gotch, however, the court ran the federal sentences concurrently with each other and concurrently with the state sentence, from the date of the federal sentencing forward. Id. The court noted

she changed her usual protocol because of the length of the federal sentence being imposed (235 months).

Here, Mr. Mound's federal sentence (120 months) is approximately one half of the federal sentence imposed in Gotch. From this the court cannot speculate there is a "reasonable probability" that, had Mr. Mound's counsel requested it, his state and federal sentences would have run concurrently instead of consecutively. As such, this court recommends that Mr. Mound's ineffective assistance claim based upon counsel's failure to request a concurrent sentence be dismissed.

### C.    Advice About USSG and the PSR

Mr. Mound's next ineffective assistance claim is two-fold. In ground three of his petition, Mr. Mound asserts (1) his counsel was ineffective because counsel "misadvised" him about what his guideline range might be (Mr. Mound asserts Mr. Hanson told him his guideline range would be 46-56 months, when in actuality it was 120-150 months), and; (2) that "never to this day" has Mr. Mound seen his presentence report. Mr. Hanson submitted an affidavit denying both of these claims, asserting (1) he fully advised Mr. Mound of the possible guideline sentence range, but never advised Mr. Mound his guideline range would be 46-56 months (Docket 10, ¶ 6); and (2) he believes he reviewed the presentence report with Mr. Mound over the telephone after faxing the report to Mr. Mound.

As to the first portion of this claim (regarding Mr. Hanson's alleged miscalculation of Mr. Mound's guideline range), Mr. Mound has failed to show prejudice by this alleged error, even assuming it occurred. This is because the

transcript from the plea hearing reveals that, even assuming Mr. Hanson

guessed wrong about what Mr. Mound's guideline range might be, the court

clearly informed Mr. Mound of the maximum possible penalty (120 months)

during the change of plea hearing (See CR Docket 168 at 6) and it also

informed him that despite what Mr. Hanson might have estimated, there was

no way to accurately determine what Mr. Mound's correct guideline range

would be until after the presentence report was completed.  Id. at 7.

Mr. Mound indicated during the plea hearing that he understood this.  Id.

Mr. Mound cannot now claim, therefore, that he suffered any prejudice

because he believed his guideline range was 46-56 months.

        In similar circumstances, the Eighth Circuit has explained that a § 2255

petitioner cannot prevail on an ineffective assistance claim based upon

counsel's incorrect advice regarding the potential sentencing guideline range.

Thomas v. United States, 27 F.3d 321, 325 (8th Cir. 1994).  In Thomas, the

petitioner, Mr. Thomas, was sentenced more harshly than he expected

because, after his presentence report was completed, it was determined he

qualified as a "career offender," resulting in an enhanced guideline range.

Mr. Thomas's counsel did not inform him of this possibility.  Id. at 323.

Mr. Thomas asserted his counsel was ineffective for failing to advise him of the

possibility he might receive a longer sentence because he was a career offender.

Id. at 324.

        The Eighth Circuit denied Mr. Thomas's ineffective assistance claim,

however, because during the plea colloquy, the district court had fully advised

Mr. Thomas of the maximum possible penalty for his crime, and of the fact that

his sentencing guideline range could not be determined until the presentence report was completed.  Id. at 326.  "[The petitioner's] right to be apprised of the court's sentencing options is no greater than the provisions of Rule 11(c)(1), which requires only that the court inform the defendant of the applicable mandatory minimum and maximum sentences."  Id.  As such, the failure by Mr. Thomas's lawyer to correctly inform him of the possibility of the career offender enhancement did not establish that his representation was deficient. Id.  Additionally, the court noted, Mr. Thomas made no claim that, had he known the correct sentencing guideline range, he would not have entered a guilty plea.

The same is true here—Mr. Mound was informed during the change of plea hearing of the maximum statutory sentence, and that his sentencing guideline could not be accurately established until the presentence report was complete.  Likewise, Mr. Mound has made no claim that, had he known his correct sentencing guideline range, he would not have entered a plea, but instead would have chosen to risk going to trial on all four of the counts in the indictment with which he was originally charged.  Mr. Mound has failed to show any prejudice caused by his counsel's alleged incorrect estimation of the sentencing guideline range, even assuming it occurred.   See also, United States v. Nesgooda, 559 F.3d 867, 870, n. 3 ("[W]e have previously held that counsel's incorrect estimate of a sentencing range was not ineffective assistance of counsel.") (citing Thomas, 27 F.3d at 326). For these reasons, this court recommends the portion of Mr. Mound's ineffective assistance claim

found in the third ground for relief which is based upon counsel's alleged miscalculation of the sentencing guidelines be denied.

Federal rules of procedure provide in pertinent part that at least 35 days before sentencing, the presentence report must be furnished "to the defendant, the defendant's attorney, and the attorney for the Government."  See FED. R. CRIM. P. 32(e)(1).  Mr. Mound's third claim for relief also asserts his counsel was ineffective for failing to allow Mr. Mound to view the presentence report. Mr. Mound asserts he did not see the report before the sentencing hearing, or even at any time "to this day."  Docket 1, p. 6.  Again, counsel disputes this claim, asserting his recollection that he faxed the report to Mr. Mound, then reviewed it with him over the telephone before the sentencing hearing.  Docket 10, p. 2, ¶ 7.  As discussed above, the court's lengthy discussion with Mr. Mound during the sentencing hearing about matters contained in the presentence report, combined with Mr. Mound's silence after counsel indicated to the court that he had reviewed the report with Mr. Mound, belie Mr. Mound's current claim that he has never seen nor reviewed the report.

More importantly, Mr. Mound does not allege prejudice by anything contained within the report, even assuming he did not review it.   No due process violation arises in the absence of a showing of prejudice.  Donnelly v. DeChistoforo, 416 U.S. 637, 648 (1974); Pickens v. Lockhart, 4 F.3d 1446, 1453-54 (8th Cir. 1993).   "A criminal defendant is not entitled to resentencing based on a Rule 32 violation unless he was prejudiced by that violation."  Price v. United States, 28 Fed. Appx. 775, 777 (10th Cir. 2001).  In Price, the § 2255 petitioner (Mr. Price) , like Mr. Mound, argued ineffective assistance of counsel

based upon his claim that his counsel did not allow him to see his presentence report.  Id. at 776.  The court denied his petition, noting that Mr. Price did not claim there was any error or inaccuracy in the presentence report—or that his sentence would have been any different had he been allowed to correct anything in it.  "Accordingly, any Rule 32 violation did not prejudice Price and was therefore harmless."  Id. at 777.

Though it may appear inequitable to require Mr. Mound to show prejudice in order to prevail on this claim by specifying error or inaccuracy in a report he claims he has never seen, the court returns to the court's lengthy on-the-record discussion with Mr. Mound during the sentencing hearing.  That discussion was centered upon information contained within the presentence report.  Mr. Mound never indicated that any of the things to which the court referred in the presentence report were incorrect, or that counsel's representation at the beginning of the hearing (that he had reviewed the presentence report with Mr. Mound) was incorrect.  "When the sentencing court has afforded the defendant full opportunity to point out any factual errors in the presentence report and he fails to do so, the court does not deny the defendant due process in imposing sentence."  United States v. Kelly, 687 F.2d 1217, 1221 (8th Cir. 1982).   See also Smith v. Woods, 505 Fed. Appx. 560, 568 (6th Cir. 2012) (assuming petitioner's claim that he did not review presentence report to be true, he could not prevail on ineffective assistance claim absent a showing that he was prejudiced by any incorrect information which the judge relied in sentencing);  United States v. Esparza-Gonzalez, 268 F.3d 272, 274 (5th Cir. 2001) (regarding FED. R. CRIM. P. 32 "remanding where

no prejudice exists would require the district court to undergo an exercise in futility in order to obtain the same sentence.").   For all of these reasons, this court recommends that portion of Mr. Mound's ineffective assistance claim in his third ground for relief which is based upon counsel's alleged failure to show Mr. Mound his presentence report be denied.

### 2.     Illegal Sentence Claim (Ground Two)

As the court interprets this claim for relief, Mr. Mound asserts his sentence is illegal because though the state court ordered Mr. Mound's 12-year sentence in CR 14-2713 to run concurrently with his federal sentence when the federal court imposed sentence in the federal case, it ordered the sentences to run consecutively.  Mr. Mound does not explain why he believes the inconsistency renders his sentence illegal, other than the fact that the state court ordered the sentences to run concurrently.  Docket 1, p. 5.

As explained above, relief under § 2255 is available only when "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  See 28 U.S.C. § 2255. Where the allegation for relief is *not* based on one of these categories, the Supreme Court has read a "fundamentality" requirement into § 2255--relief is available for only those errors which constitute a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure."  Hill, 368 U.S. at 428; Peguero, 526 U.S. at 27-30.

Incongruity between state and federal sentencing judges' orders is not a fundamental defect. Therefore, when a state court orders sentences to run concurrently but the federal court orders the same sentences to run consecutively, the state court's order is not binding on the federal court, and the incongruity provides no basis for § 2255 relief. "The discretion of a federal sentencing court cannot be limited by a state court judgment." Hendrix v. Norris, 81 F.3d 805, 807 (8th Cir. 1996) (denying § 2254 relief based upon incongruity between language in state and federal sentences). The Eighth Circuit has also explained "the state court's actions raises the defendant's expectations, but does not resolve the issue." Fegans v. United States, 506 F.3d 1101, 1104 (8th Cir. 2007) (denying coram nobis relief when state court ordered sentences to run concurrently, but federal court did not intend sentences to run concurrently). See also, Abdul-Malik v. Hawk-Sawyer, 403 F.3d 72, 75 (2d Cir. 2005) (state court's intent that sentences run concurrently not binding on federal authorities). Because Mr. Mound has not stated any viable basis for § 2255 relief in ground three of his petition, this court recommends that it be dismissed.

## C.    No Evidentiary Hearing is Warranted

A § 2255 motion can be denied without holding an evidentiary hearing if (1) the movant's allegations, even if true, would not entitle him to relief; or (2) the movant's allegations cannot be taken as true because they are contradicted by the record, they are inherently incredible, or they are conclusions rather than factual statements. Hyles v. United States, 754 F.3d 530, 534 (8th Cir. 2014). "If [the court] can determine from the motion and the

supporting record in the case that [the movant] is not entitled to § 2255 relief, then no hearing was, or is now, required." Saunders v. United States, 236 F.3d 950, 952 (8th Cir. 2001).

Here, the court concludes that no evidentiary hearing is warranted. Even taking Mr. Mound's allegations of ineffective assistance (grounds one and three) as true, he has failed to demonstrate prejudice, which is a required showing under Strickland. The allegation contained in the second ground of Mr. Mound's § 2255 petition does not entitle him to relief. There is no issue of fact or credibility to be determined by holding an evidentiary hearing. Therefore, the court recommends no such hearing be held.

## CONCLUSION

Based on the foregoing facts, law and analysis, this magistrate judge respectfully recommends that the government's motion to dismiss [Docket No. 15] be granted and that Mr. Mound's § 2255 motion [Docket No. 1] be dismissed with prejudice.

## NOTICE OF RIGHT TO APPEAL

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. See FED. R. CIV. P. 72; 28 U.S.C. § 636(b)(1)(B). Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Id. Objections must be timely and specific in order to require de novo review by the district court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED December 13, 2017.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge